UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 18-CR-51 (RDM) |
| ) | |
| CHARLES M. THOMAS, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S MEMORANDUM REGARDING DEFENDANT'S
VIOLATIONS OF SUPERVISED RELEASE**

Defendant Thomas's recent conviction in Maryland for defrauding a renovation customer of approximately $55,000, demonstrates that defendant has not changed his ways since he was sentenced in the instant offense on May 30, 2020, for committing a multi-year bribery conspiracy and three separate schemes involving government employees to illegally gain financial benefits and contracts for his company. As a result, the government recommends that pursuant to 18 U.S.C. § 3583(e)(3), the Court revoke defendant's supervised release and impose a within the U.S. Sentencing Guideline (U.S.S.G.) sentence of 9-months incarceration followed by an additional 27 months' supervised release for violating the terms of his supervised release.[1]

**I.      PROCEDURAL BACKGROUND**

On March 5, 2018, a criminal information was filed, charging defendant Charles Thomas, with one count of conspiracy to commit bribery, in violation of 18 U.S.C. § 371, and two counts of conspiracy to pay gratuities and violation the Procurement Integrity Act, 18 U.S.C. § 371. *See* ECF No. 1. On May 30, 2018, pursuant to a cooperation plea agreement, defendant pled guilty to the criminal information. *See* ECF No. 13. On April 29, 2020, a Presentence Report ("PSR") was

---

[1] The defendant still has substantial restitution and forfeiture financial obligations in this matter which have not been fully paid.

filed in preparation of defendant's sentencing hearing. *See* ECF No. 27. On May 1, 2020, the government moved for a downward departure based upon defendant's cooperation and substantial assistance to the government. *See* ECF No. 30. In this matter, defendant got the benefit of his cooperation by the government's recommendation of a six-level downward departure pursuant to U.S.S.G. 5K1.1 due to substantial assistance. *Id*. On August 31, 2021, the defendant was sentenced well below the guidelines range of 37 to 46 months incarceration to concurrent 16-month terms of imprisonment on each count, followed by 24-months of supervised release. *See* ECF No. 41. In addition, defendant was ordered to pay restitution in the amount of $179,999.75, and a forfeiture money judgment in the same amount. *Id*., *see also* ECF No. 17.

Defendant's supervision with U.S Probation began on December 2, 2022.[2] *See* ECF No. 44. On April 18, 2024, U.S. Probation filed a Petition alleging defendant violated the terms of his supervised release soon after being release from prison, specifically by: (1) failing to report as required (May-July 2023, September-December 2023, February-March 2024); (2) failing to submit to substance abuse testing; (3) failing to pay restitution as required (March 20203, and May 2023-February 2024); and (4) committing another federal, state or local crime. *Id*. Defendant requested and was allowed to continue the HOV hearing multiple times.[3]

It was not until almost a year after the Probation Office filed its Petition, that on March 26, 2025, defendant finally conceded to violating a term of his supervised release. Specifically,

---

[2] The original expiration date for defendant's supervised release was December 2, 2024. *Id*.

[3] The fact that Defendant's supervised release originally was set to expire on December 3, 2024, is irrelevant as to whether the Court should revoke Defendant's supervised release and impose a term of incarceration based upon the violations. The Probation Office filed the Petition well before the original expiration date of defendant's supervised release.

Defendant admitted to violation Condition No. 4 – committing another crime. *See* March 26, 2025, Minute Entry. In addition, at that hearing, the Court held in abeyance whether defendant violated Condition No. 3 – failing to timely make restitution payments on his over $177,000 restitution obligation. *Id*. Defendant's Memorandum in Aid of Hearing on Violation [ECF No. 61] does not discuss whether defendant failed to make his restitution payments as required. As of June 16, 2025, according to Defendant's probation officer, Thomas has failed to make any restitution payments since November 13, 2024, when he made a $50.00 restitution payment. Therefore, defendant is also in violation of Condition No. 3, and this violation should be considered by the Court in revoking defendant's supervised release and imposing the appropriate sentence.[4]

A final hearing regarding defendant's violation of supervised release is scheduled for July 1, 2025, at 10:00 a.m. in Courtroom 8.

## II.   FACTUAL BACKGROUND

In the instant matter, in Count One, Thomas engaged in a conspiracy to commit bribery to benefit his company and enrich himself at the expense of government programs and the integrity of the federal government procurement process. Beginning in or about 2013 to at least in or about 2014, defendant Thomas conspired with others to bribe a public official, an employee of the District of Columbia's Office of the State Superintendent of Education (OSSE). Thomas used his solely owned company, Company A, which was to purportedly provide technology services to federal agencies and educational services to public school children in the Washington metropolitan area. *See* ECF No. 14, ¶¶ 1-23. Thomas and others made payments to Person A, a government employee, in exchange for Person A using their official position to create and

---

[4] The government withdrew Violation Nos. 1 and 2. *Id*.

submit fraudulent purchase orders and otherwise cause OSSE to make payments to Company A for work that Company A did not perform.[5] *Id*. Thomas's scheme spanned several years and involved the forgery of numerous documents and the depositing of checks from the District of Columbia consisting entirely of proceeds of his scheme. *Id*.

Counts Two and Three involved separate bribery schemes. In these counts, Thomas sought and obtained from government employees, non-public information regarding U.S. Housing and Urban Development Agency ("HUD") contracts, which gave him unfair advantage in the government procurement process. *Id*., ¶¶ 24-94. These actions undermined the government contracting process and impacted the particular contracts involved. Specifically, in or around 2009, Thomas, through another one of his companies began providing tutoring and mentoring services to District of Columbia Public School ("DCPS") students. From 2010 through about 2015, Thomas provided several government employees with cash and other items of value in exchange for the government employees providing Thomas with non-public information in order for Thomas and his company to gain government contracts worth over a million dollars. *Id*.

Thomas' newest criminal activity, and the basis for the revocation of defendant's supervised release, involved another of his businesses – his limited liability construction company for which he is the sole owner. *See* ECF No. 27 at ¶ 166. As part of a plea agreement in the case of *State of Maryland v. Charles Thomas*, Case No. C-24-CR-24-001093, in the Circuit Court for Baltimore City, Maryland, on January 30, 2025, Thomas pled guilty to one count of failure to perform a contract. The plea colloquy described Thomas' criminal activity. *See* attached Exhibit A (January 30, 2025, Maryland plea transcript); *see also* ECF No. 61-2.

---

[5] Stealing from programs which were designed to provide D.C. school children with services does not fit with the purported philanthropic character defendant attempts to paint of himself. *See* ECF No. 61 at 7-8/

Thomas signed a contract to handle a residential renovation for $86,000. Pursuant to that contract and requests from Thomas, the victim provided Thomas with payments beginning on April 26, 2023, when he paid $15,000 for Thomas to start the renovation work. On May 3, 2023, Thomas requested an additional $18,000, which he received. On May 8, 2023, Thomas contacted the victim company that the electrical, framing and plumbing would be completed within one week's time, which did not happen. On May 11, 2023, Thomas requested another $22,000 ostensibly to complete the renovation, which he received. Thomas next told the victim that the entire job would be complete within 3-4 weeks. However, no work was done on the property between May 12th and May 25th. On June 8, 2023, the victim met with Thomas to go over the design plans because the project was behind schedule. On June 28, 2023, Thomas requested an addition $8,000 to complete the project, which he received.

On June 30, 2023, the victim received communication from an individual that purportedly worked for Thomas, Person One, stating that the victim needed to call Home Depot to pay for additional supplies. On July 12, 2023, the owners of the property went to the location and saw that progress had slowed and many portions remained incomplete. On July 31, 2023, the owners called Thomas and discussed the remaining work to be done. On August 1, 2023, Thomas sent emails to the victim stating that he had not instructed them to pay Person One and that Thomas was no longer going to work on the project. On August 2, 2023, the victim requested their money back so that they could get another contractor to complete the job, which they never received. According to the victim, defendant ceased all communications and "did not respond at all to subsequent demands." *See* ECF No. 61-5. In total, the victim provided Thomas with more than $55,000.[6]

---

[6] This is the amount of restitution owed to the victim per the Maryland Court's order. *See*

5

Regardless of how defendant now wants to explain his actions as a simple contract dispute, (*see* ECF No. 61 at 3-7), he knowingly pled guilty to a criminal charge, which involved defendant repeatedly taking money from the victim, while promising to perform renovation services, which he did not complete and appears to never have intended to do so. As a result of his guilty plea, the Maryland court sentenced Thomas to a term of six-months' incarceration, all suspended, three years of supervised probation, and a special condition that Thomas pay $55,000 to the victim.[7]

## II.    THE APPLICABLE STATUTORY PENALTIES

In the instant matter, Thomas was convicted of counts charging conspiracy to commit bribery, in violation of 18 U.S.C. § 371, and conspiracy to pay gratuities and violate the Procurement Integrity Act, in violation of 18 U.S.C. § 371, which are class D felonies. *See* 18 U.S.C. 3559(4). Upon revocation of supervised release, the maximum term of imprisonment for a Class D felony is 24 months' incarceration, and 36 months of supervised release. *See* 18 U.S.C. §§ 3583(e)(3), and (b)(1).

## III.    THE APPLICABLE ADVISORY SENTENCING GUIDELINES RANGE

The applicable U.S. Guidelines show that revocation of Thomas' supervised release based upon his new conviction for failure to pay on a contract (a misdemeanor) is s Grade C violation. *See* U.S.S.G. §7B1.1(a)(2); *see also* U.S.S.G. § 7.B1.3(A)(1).  At the last hearing, the Court withheld deciding whether Thomas violated Condition No. 3 of his supervised release for failure to pay restitution as required. At this time, because of Thomas' previous failures to pay

---

ECF No. 61-7 at 2.
  [7] There is no indication in the record that a presentence report was prepared prior to the Court imposing sentence in the Maryland matter.

restitution and his continued failure to timely pay restitution since November 2024, the Court should also find a violation of Condition No. 3. Under a Grade C violation, the Court may (A) revoke supervised release; or B) extend the term of supervised release and/or modify the conditions of supervision. *Id.* Defendant's criminal history category is a I,[8] therefore the advisory U.S. Sentencing Guideline for defendant's Grade C violations is 3-9 months' incarceration followed by up to 36 months of supervised release (less the amount of time of incarceration imposed). *See* U.S.S.G. §7B1.4(a); 18 U.S.C. § 3583(b)(1).

### IV. THE 18 U.S.C. § 3553(a) FACTORS SUPPORT A SENTENCE OF INCARCERATION

While Defendant pled guilty to a misdemeanor charge, the facts show that Thomas stole over $55,000 from the victim – which is certainly a serious offense. Defendant's new criminal conduct is just more of the same – defendant's activity of lying and cheating. Certainly, Thomas's previous incarceration and time on supervised release was not a sufficient deterrence for Thomas to cease criminal activity or to demonstrate remorse for his criminal activity. He now has another victim – one that is owed $55,000, above and beyond the more than $177,000 he currently owes in this matter. Defendant's suggestion that he receive a reward (of either termination of his supervised release without consequence, or a below-Guideline sentence) for once again violating the law, incurring more restitution obligations, and failing to meet his conditions of supervised release is outrageous and certainly does not meet the factors set forth under 18 U.S.C. § 3553(a). *See* ECF No. 61 at 1.

As a consequence of defendant's continued criminal activity and the violation of the terms of his supervised release, the government requests that the Court revoke defendant's

---

[8] The applicable criminal history category upon revocation of supervised release is the same as it was at the time of sentencing. *See* U.S.S.G. § 7B1.4(a)

supervised release and impose a sentence at the top of the U.S. Guidelines range in order to impress upon defendant the seriousness of his criminal conduct and failure to abide by the terms of his supervised release. The imposition of a sentence at the top of the Guidelines range is necessary to meet the goals of sentencing upon revocation – to impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense and the history and characteristics of the defendant, to afford adequate deterrence, to provide defendant with needed educational or vocational training, consideration of the U.S. Sentencing Guidelines, and to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3583(e); 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).

    Defendant's continued disregard for the law and the facts underlying the new conviction showing that Defendant's conduct was not accidental or a spur of the moment decision. He lured his victim into continuing to provide him with money on a contract – all the while promising that he would complete the job with fraudulent promises and failing to provide the services for which he contracted – ultimately stopping all communication with the victim. Defendant's fraudulent scheme was not a crime of opportunity — it was a deliberate, concerted offense similar to the underlying facts in this case. Defendant's criminal activity herein extended over a number of years using various means to gain money and to cheat the procurement process. Defendant's flagrant violation of the conditions of his supervised release by committing another crime warrants a within-Guidelines sentence of incarceration in order to promote respect for the law and to deter defendant and others from failing to abide by the Court's conditions while on supervised release.

    Defendant claims that he deserves either termination of his supervised release without consequence or a below Guidelines sentence for violating the conditions of his supervised

release, asserting that he is "now 51years old, and he has serious physical and mental health problems. His mental health is precarious; he has been diagnosed with depression and anxiety." ECF No. 61 at 8. These assertions regarding his mental health contradict the statement defendant made to the Maryland court on January 30, 2025. When asked during his plea colloquy, "You're not under the treatment, care of a psychiatrist or psychologist?" Defendant answered, "No." *See* Exhibit A at 5. Defendant also asserts that "The physical health also is precarious." *See* ECF No. 61 at 8.  While defendant has had a series of health issues in 2023, including spinal surgery in March 2023, and an October 2023 surgery for a fractured femur, the records he provided are over a year and half old.  *See* ECF No. 61-9. There is little evidence to suggest that defendant's physical condition precludes him from daily activities or from abiding by the conditions of supervised release since that time or currently.

     There is simply no excuse for defendant's new criminal conduct nor the fact that he repeatedly failed to timely pay his minimal restitution obligation in this matter. Committing a new criminal offense is not merely a technical violation – it demonstrates a lack of respect for the rule of law and remorse for his earlier conduct. Defendant is an educated man with intelligence and skills, yet he failed to use those skills to better himself while on supervision and to meet the expectations set for him by the Court. Therefore, the government requests that the Court revoke his supervised release, impose a sentence of 9 months' incarceration and 27 months

of supervised release along with ordering his continued financial obligations of restitution and forfeiture.

         Respectfully submitted,

         JEANINE FERRIS PIRRO
         United States Attorney

By: */s/ Diane G. Lucas*
   DIANE G. LUCAS (D.C. Bar No. 443610)
   Assistant United States Attorney
   United States Attorney's Office
   District of Columbia
   601 D Street NW
   Washington, DC 20530
   (202) 252-7724 (Lucas)
   Diane.Lucas@usdoj.gov